**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS**

| Name of Assigned Judge or Magistrate Judge | *ROBERT W. GETTLEMAN* | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | *98 C 6250* | Date | April 13, 2001 |
| Case Title | Philip S. Jackson      v      Casio Phonemate, Inc., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) Ruling / Hearing on _____ set for _____ at _____

(5) Status hearing [ ] held [ ] continued to [ ] set for [ ] re-set for _____ at _____

(6) Pretrial conf. [ ] held [ ] continued to [ ] set for [ ] re-set for _____ at _____

(7) Trial [ ] Set for [ ] re-set for _____ at _____

(8) [ ] Bench Trial [ ] Jury Trial [ ] Hearing held and continued to _____ at _____

(9) This case is dismissed [ ] without [ ] with prejudice and without costs [ ] by agreement [ ] pursuant to
[ ] FRCP 4(j) (failure to serve) [ ] General Rule 21 (want of prosecution) [ ] FRCP 41(a)(1) [ ] FRCP 41(a)(2)

(10) [✓] [Other docket entry] **Memorandum opinion and order entered.**
**Accordingly, defendant's motion for summary judgment is granted.**
**Plaintiff's motion to strike certain exhibits is denied as moot.**

(11) [✓] [For further detail see [ ] order on the reverse of [✓] order attached to the original minute order form.]

| | | | number of notices | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | date docketed | Document # |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing dpty. initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate Judge. | | date mailed notice | |
| | courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

APR 17 2001

CM

DOCKETED

APR 1 7 2001

PHILIP S. JACKSON, )
)
           Plaintiff, )
)   No.   98 C 6250
    v. )
)   Judge Robert W. Gettleman
CASIO PHONEMATE, INC., ASAHI )
CORPORATION, and CASIO COMPUTER CO., )
LTD., )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Philip Jackson has filed a complaint against defendants Casio PhoneMate, Inc.,

Asahi Corp., and Casio Computer Co., Ltd., alleging patent infringement. Defendant Casio

PhoneMate ("defendant") has filed a second motion for summary judgment pursuant to Fed. R.

Civ. P. 56.[1] For the following reasons, defendant's motion is granted.

### FACTS

Plaintiff is the owner of United States Patent No. 4,596,900 ("the '900 patent").

Plaintiff's invention is a device that, when connected to an appliance or other electrical device,

enables a user to remotely control many functions of that appliance or device by using the touch-

tone features of a conventional telephone. For example, plaintiff's invention can be connected to

a home lighting system so that the homeowner can call his home from a remote location and use

the device to turn his lighting system on or off. To do so, the homeowner calls his home and

---

[1] Defendant's first motion for summary judgment was granted in part and denied in part. See Jackson v. Casio Phonemate, Inc., 105 F. Supp. 2d 858 (N.D. Ill. 2000) ("Jackson I"). Familiarity with the facts and discussion of Jackson I is assumed herein.



enters a three-digit "access code" and then various "control codes." In this example, the homeowner would enter the access code "*,1" to turn the lighting system on or "#,1" to turn the lighting system off. When a control code is entered, the "detecting means" of the device detects which control code has been entered and sends out a corresponding "sequence detection signal." The sequence detection signal is received by a bistable "control means" that then sends a "control signal," which either turns the appliance on or off depending upon which control code was entered by the homeowner. Plaintiff's device uses integrated circuit digital logic to perform these functions.

Defendant's allegedly infringing device, the TC-540 ("the accused device"), is a combination cordless telephone and answering machine. When a call is placed to the owner's home, the accused device answers the phone, plays a message, and then enables the caller to leave a message in one of three mailboxes by pressing various tones. The accused device can be used by its owner to retrieve, save, replay and erase messages left by callers. This can be done by actually touching the machine's various controls or by accessing the machine remotely using the "touch-tone" features of a conventional telephone. When accessed remotely, the accused device requires the owner to enter an "access code." Then, by pressing various tones, the owner can retrieve, save, replay, and erase messages. Defendant's device uses a microprocessor to perform its functions.

Plaintiff alleges that the accused device infringes the '900 patent in the way that it enables the owner to remotely access and play back messages in selected mailboxes and in the way that it limits remote access to callers who enter an access code.

2

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

In an action for patent infringement, the plaintiff bears "the burden of proving infringement by a preponderance of the evidence. Kegel Co., Inc. v. AMF Bowling, Inc., 217 F.3d 1420, 1425 (Fed. Cir. 1997). Thus, to defeat a motion for summary judgment of non-infringement, the plaintiff must show that "the evidence is such that a reasonable jury could return a verdict for [the plaintiff]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). As always, the court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

3

## DISCUSSION

In <u>Jackson I</u>, defendant argued that the accused device lacks a "gating" means (Claim 1), a "flip-flop" means (Claim 3), a "counter" means (Claim 5), and a "feedback-gate" means (Claim 10).[2] The court granted defendant's motion for summary judgment with respect to Claims 1 and 10 and also as to literal infringement of Claim 3, leaving Claim 5 in its entirety and infringement of Claim 3 under the doctrine of equivalents. Defendant's second motion for summary judgment, now before the court, seeks judgment as a matter of law on these remaining claims. The court will address each in turn.

### I. Claim 3

The court need not address the parties' summary judgment arguments with respect to Claim 3 because, while defendant's motion was pending, the Federal Circuit decided <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 234 F.3d 558 (Fed. Cir. 2000), making clear that prosecution estoppel bars plaintiff from pursuing Claim 3 under the doctrine of equivalents.[3] In <u>Festo</u>, the Federal Circuit held that when the scope of a patent claim is narrowed by amendment—whether voluntarily or in response to a rejection by a patent examiner—prosecution estoppel operates as "a complete bar" to recovery under the doctrine of equivalents unless the plaintiff can establish that the amendment was not related to patentability. <u>See</u> <u>id</u>.

---

[2] The parties agree that Claims 1, 3, 5, and 10 are independent claims upon which the remaining claims depend. "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." <u>Wahpeton Canvas Co. v. Frontier, Inc.</u>, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

[3] Upon learning of <u>Festo</u>, the parties were given the opportunity to file supplemental briefs arguing its applicability to, and impact on, the instant case.

Defendant argues that <u>Festo</u> bars plaintiff from recovering under the doctrine of equivalents for Claim 3 because the "flip-flop" means of plaintiff's invention was amended to narrow its scope during the third re-examination of the '900 patent. To support this, defendant points to the prior rejection of Claim 3 under 35 U.S.C. §102(b) (as anticipated by prior patents) and under 35 U.S.C. §103 (as obvious in view of prior patents). In response to that rejection, defendant contends, plaintiff amended Claim 3 to recite the "if and only if" language that the court held precluded literal infringement in <u>Jackson I</u>. Accordingly, when plaintiff sought re-examination of the '900 patent, he explained to the examiner that Claim 3 is, "now more clearly distinguish[ed] over [the prior patents] because [it] now recite[s] that this flip-flop means is maintained in its present state *until if and only if* the flip-flop means responds to a sequence detection signal selectively associated with the other of said conditions of *fewer than all* of the bistable operations." (Emphasis in original.)

Plaintiff fails to rebut this argument, admitting that <u>Festo</u> "limits the application of the doctrine of equivalents to Claim 3," and asking the court to "hold" its decision on this claim "in abeyance" until either the plaintiff in <u>Festo</u> fails to appeal, or the Supreme Court affirms, that decision. The court will not do so. <u>Festo</u> is binding precedent on the instant case, and the court will follow its mandate. Applying <u>Festo</u>, the court concludes that plaintiff is barred from recovery under the doctrine of equivalents because he has failed to establish that his amendment of Claim 3 did not relate to the patentability of the '900 patent. Thus, summary judgment is granted to defendant with respect to Claim 3.

## II. Claim 5

In <u>Jackson I</u>, defendant argued that the accused device does not perform the functions of

the "access limiting circuit means" or the "counter means" of Claim 5 either literally or equivalently. Plaintiff disagreed, relying on the testimony of his expert, Dr. LeRoy Silva ("Dr. Silva"). Upon construing the above functions and comparing them to functions performed by the accused device, the court concluded that genuine issues of material fact exist as to whether the accused device performs the same or substantially the same functions as plaintiff's invention.

Fine, defendant says, but it is still entitled to summary judgment. According to defendant, to survive summary judgment, plaintiff must show not only that there is a genuine issue of material fact as to whether the two devices perform the same or substantially the same *functions*, but also as to whether the *structure* of each functional element of the accused device is identical or equivalent to the corresponding functions of plaintiff's invention.[4] Plaintiff agrees, and so does the court. To make a finding of literal infringement or infringement under the doctrine of equivalents for a means-plus-function claim, the court must compare the '900 patent to the accused device not just in terms of the functions performed by each claim, but also in terms of the way in which the embodiment of each claim (i.e., its structure) goes about performing each function. See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267-1268 (Fed. Cir. 1999); Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1309 (Fed. Cir. 1998); 35 U.S.C. §112, ¶6. In order to complete this task, the court must first

---

[4] The parties agree that Claim 3 and Claim 5 are "means-plus-function" claims; they describe a "means or step for performing a specified function." See 35 U.S.C. §112, ¶6. This designation brings both a benefit and a cost to plaintiff. On the upside, when prosecuting the '900 patent, plaintiff had to identify only the functions performed by each of his claims, and not the structures or materials that perform those functions. On the downside, the scope of plaintiff's claims are restricted to the particular structures, materials, or acts disclosed in the '900 patent specifications and equivalents thereof. See Personalized Media Communications, LLC v. International Trade Comm'n, 161 F.3d 696, 703 (Fed. Cir. 1998).

"construe the function[s] recited in [the '900 patent]," and then it must "determine what structures have been disclosed in the specification that correspond to the means for performing [those] function[s]." Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1361 (Fed. Cir. 2000).

## A. Plaintiff's New Evidence

Before the court can undertake that inquiry, however, a dispute has arisen between the parties that must be settled. Along with plaintiff's response to the instant motion, plaintiff submitted claim charts that identify the corresponding structures to the functions of Claim 5. Plaintiff also submitted a supplemental declaration by his expert, Dr. Silva, which purports to identify the "software subprogram called 'code_reg'" in the accused device that performs the "counter means" function of that claim. Defendant contends that plaintiff's charts and Dr. Silva's supplemental declaration should be disregarded by the court because by filing them plaintiff violated an agreement he made in open court.

This contention stems from a set of interrogatories defendant served plaintiff on April 23, 1999. Interrogatory No. 2 in that document requested that plaintiff: "state in the form of a claim chart a detailed explanation of how [the accused device] embodies each limitation of each . . . claim [in the '900 patent that is alleged to be infringed]." On September 8, 1999, defendant filed a motion to compel a more complete answer to Interrogatory No. 2, expressing its belief that the initial 90 pages of claim charts submitted by plaintiff were inadequate. In response, plaintiff argued that his claim charts are adequate since they "thoroughly explain how [defendant] is infringing [the '900] patent." Further, plaintiff wrote, "even if the claim charts [are] inadequate, the 177-[p]age Preliminary Expert Report . . . prepared by . . . Dr. Silva satisfies any remaining

obligation."[5]

Several months later, on February 10, 2000, the following colloquy took place between counsel and the court:

COURT: . . . [A]s I understand it, the plaintiff here is satisfied with relying on the claim charts that he has produced in response to the question propounded to him, right?

PLAINTIFF'S COUNSEL: Yes, clearly.

COURT: All right. Now, the defendant is saying you haven't disclosed how the defendant's structure corresponds to the functions disclosed in your claims.

DEFENDANT'S COUNSEL: That's right, Your Honor.

COURT: If that's true, and [here's] my standing on that, he thinks it is and you think it isn't[.] [I]f you're right, that would affect, obviously—well, depending on who's right here, it would affect the course of the summary judgment ruling. But I don't think it would be within my own sound exercise of discretion to say, well, you've got to answer more. You've got to go further. He's gone as far as he wants to go, and [plaintiff] will suffer the consequences or reap the benefits of that decision.

PLAINTIFF'S COUNSEL: That's correct.

COURT: So I think that answers your question. I mean, it seems to me that the defendants here are arguing summary judgment issues more than discovery issues.

DEFENDANT'S COUNSEL: If that's as far as [plaintiff] is going to be permitted to go in this case with his claim charts, then I agree fully with Your Honor.

COURT: Okay. So I'm going to deny the motion. . . .

_____

[5] The import of plaintiff's new claim charts is not lost on the court; they beg the question that if plaintiff's prior charts were sufficient to show infringement, why did plaintiff file new claim charts?

Based on the above exchange, defendant now argues that the court should strike plaintiff's new charts and Dr. Silva's supplemental declaration because they contain information that should have been submitted in plaintiff's original claim charts (or at least in response to defendant's motion to compel). As defendant points out, "[n]o one, including plaintiff, can say how the accused [device] embodies a [claim] limitation without first construing that limitation, [which] requires a construction of the corresponding structure identified in the ['900] patent." Plaintiff responds to defendant's assertion by saying that defendant "has not . . . asked for a claim construction hearing, filed a Markman[6] brief, or even asked [plaintiff] in discovery about his contentions as to the scope of the claims," and also that defendant "has not yet asked, in discovery, for [information about the corresponding structures of the '900 patent]."

It is clear that defendant's Interrogatory No. 2 sought the exact information that plaintiff now attempts to submit. While it may be true that the language of the interrogatory does not specifically request plaintiff's analyses of both plaintiff's invention and the accused device functionally and structurally, it is axiomatic that such analyses are required in every action involving means-plus-function claims. Indeed, in his response to the instant motion, plaintiff agrees that additional structural analysis is appropriate.

It is equally clear that when defendant did not receive the information requested in Interrogatory No. 2, defendant filed a motion to compel and outlined for plaintiff exactly why this information is necessary to show infringement. Defendant argued in its motion to compel that, "neither [plaintiff] nor [Dr.] Silva points to any specific structural components in either the

---

[6] See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

[accused device] or the ['900] patent that . . . perform the allegedly infringing functions."
Defendant also stated that, "if [plaintiff] is unable to satisfy [the Federal Circuit's standard for establishing infringement], . . . the case should be dismissed forthwith, with prejudice."

In his response to the motion to compel, plaintiff argued that his evidence was sufficient to establish infringement. Plaintiff supported this assertion by saying that Dr. Silva uses "the same test" in the instant case that he used in <u>Endress + Hauser, Inc. et al. v. Hawk Measurement Sys. Pty. Ltd.</u>, 1994 U.S. Dist. LEXIS 17845, 1994 WL 736442 (S. D. Ind. 1994), which was affirmed by the Federal Circuit, 122 F.3d 1040 (Fed. Cir. 1997). Defendant dispelled that myth, however, by pointing out that Dr. Silva's analysis in <u>Endress + Hauser</u> was much more thorough than his analysis in the instant case:

> For example, for his analysis of the "level indicating means," in the patent he identified adder 124, metal-oxide semiconductor register 126, AND gates 128, comparator 130, maximum value register 132, address register 134, display register 136, and digital-to-analog converter 138. He identified the corresponding structural elements in the accused device as a microprocessor programmed to perform the exact function, a "latch" circuit, a set of three chips known as EPROM's, and certain random access memory chips and display drive components. Identification of the microprocessor included noting the relevant specific software steps of comparing numbers from digitized echo pulse responses, determining largest sample values, and calculating certain distances from those results. As required, the structural elements were identified in <u>Endress + Hauser</u> for both the patent and the accused device at the level of individual circuit elements and software steps, in compliance with <u>Pennwalt</u>.

Despite having the weaknesses of his case exposed in the fall of 1999, plaintiff still refused to give defendant the information it requested.

These events culminated with the February 10, 2000, colloquy between the court and counsel (recited above). At that hearing, the court warned plaintiff that, "depending on who's right here, it would affect the course of the summary judgment ruling," and that plaintiff would

"suffer the consequences or reap the benefits of that decision." To this, plaintiff's attorneys responded, "[t]hat's correct."

Based on all this, the court finds that plaintiff was amply warned by defendant and by the court that he might suffer the consequences that defendant now suggests. Moreover, plaintiff's explanations for his conduct are disingenuous. If plaintiff believed that a claim construction hearing or the filing of <u>Markman</u> briefs were necessary precursors to its complete answer to Interrogatory No. 2, it had ample opportunity to express that belief; plaintiff could have said so in response to the interrogatory, in response to the motion to compel, or even during the February 10, 2000, hearing. Instead, plaintiff insisted that he had produced enough information to establish infringement. Despite this, plaintiff now wants the court to believe that defendant "has not yet asked, in discovery, for [information about the corresponding structures of the '900 patent]." This is preposterous.

Based on plaintiff's conduct, the court strikes Dr. Silva's supplemental declaration. Plaintiff's new claim charts are spared, however, because they will aid the court in construing plaintiff's claims and because they will not prejudice defendant.[7] As will be explained below, regardless of precisely how the corresponding structures of Claim 5 are construed, the court finds that plaintiff has not offered sufficient evidence upon which a reasonable jury could base a finding of infringement, either literally or under the doctrine of equivalents.

---

[7] Without the charts, the court would be hard-pressed to construe the corresponding structure to each of the Claim 5 functions of plaintiff's device. This is not because of any shortcoming of the court, but rather because plaintiff's previous attempt at identifying the corresponding structure of his own invention was woefully inadequate. <u>See</u> footnote 10, infra.

**B. Claim construction step one: the functions of the "access limiting circuit means" and the "counter means"**

The first step of the claim construction analysis was completed in part in <u>Jackson I</u> when the court construed the functions of the "access limiting circuit means" and the "counter means" of Claim 5.[8] The function of the "access limiting circuit means" was construed to "prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined tone signals." <u>Jackson I</u>, 105 F. Supp. 2d at 874. The "counter means" was construed as that "part of the access limiting circuit means" that "count[s] the number of tone signals that are entered until the number of signals entered equals the number of digits in the access code . . . [and then] enables operation of the detecting means." <u>Id</u>. at 875.

**C. Claim construction step two: the corresponding structure of the "access limiting circuit means" and the "counter means"**

Next, the court must construe these functions "to cover the corresponding structure, material, or acts described in the ['900 patent] specification and equivalents thereof." 35 U.S.C. §112, ¶6; <u>see also</u> <u>Micro Chem., Inc. v. Great Plains Chem. Co.</u>, 194 F.3d 1250, 1257 (Fed. Cir. 1999) ("Application of 35 U.S.C. §112, ¶6 requires identification of the structure in the specification which performs the recited function."); <u>Chiuminatta</u>, 145 F.3d at 1309. To this end, the court need only construe the terms "that are in controversy, and only to the extent necessary to resolve the controversy." <u>Vivid Technologies, Inc. v. American Science & Engineering, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999).

---

[8] The "access limiting circuit means" and the "counter means" were the only Claim 5 functions construed in <u>Jackson I</u> because they formed the basis for defendant's summary judgment motion. The court need not construe the functions of the remaining "means" because, as discussed below, doing so would have no effect on the outcome of the instant motion.

As explained above, plaintiff's new claim charts set forth the corresponding structures to the "access limiting circuit means" and the "counter means" in the '900 patent, and defendant does not contest their accuracy. Therefore, the court construes the corresponding structure to the "access limiting circuit means" in Claim 5 as follows: "break-in prevention system 25; relay 90 and integrated circuits including AND gate 55, OR gate 85, counter 70, buffer 88, exclusive OR gate 95, AND gates 100, 102, 104, 108, 112, 116, 118, 126, flip-flops 106, 110, 114, 122, OR gate 120, counter component 124, [and] inverter 125." Likewise, the court construes the corresponding structure to the "counting means" in Claim 5 as follows: "a portion of break-in prevention system 25; integrated circuit[s] including flip-flops 106, 110, 114, AND gates 104, 102, 100, 105, 112, and 118."

Before the court can move on to its infringement analysis, however, the court must address plaintiff's contention that "a microprocessor containing digital logic integrated circuitry, and programmed to perform the same functions [as performed by the digital logic integrated circuitry of the '900 patent]," is an "equivalent" under 35 U.S.C. §112, ¶6 and is therefore covered by the '900 patent. The court agrees that it is, for all the reasons set forth in <u>Jackson v. Thomson Consumer Elecs.</u>, 2001 U.S. Dist. LEXIS 1807, *10-14, 2001 WL 201372, *4-5 (S.D. Ind. 2001).

As discussed below, however, this finding does plaintiff little good because he has failed to show that the microprocessor used in the accused device is, in fact, programmed to perform the same functions performed by plaintiff's invention.

**D. Infringement Analysis**

"Literal infringement of a §112, ¶6 limitation requires that the relevant structure in the

13

accused device perform the identical function recited in the ['900 patent] claim and be identical or equivalent to the corresponding structure in the specification." Odetics, 185 F.3d at 1267 (Fed. Cir. 1999) (citations omitted). "Functional identity and either structural identity or equivalence are both necessary" to show literal infringement. Id. (citing Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir. 1987)). Equivalence, for purposes of §112, ¶6, requires that the accused device perform the identical functions as plaintiff's device and be otherwise insubstantially different with respect to structure. See Kemco, 208 F.3d at 1364 (citations omitted); Chiuminatta, 145 F.3d at 1308; see also 35 U.S.C. §112, ¶6.

Similarly, the test for infringement under the doctrine of equivalents is: "if the function, way, or result of the assertedly substitute structure [in the accused device] is substantially different from that described by the ['900 patent] claim limitation, equivalence is not established." Odetics, 185 F.3d at 1267. Put another way, the question is whether the accused device "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as [plaintiff's] claimed invention." Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1043 (Fed. Cir. 1993) (quoting Pennwalt, 833 F.2d at 934).

As explained above, the court held in Jackson I that there is a genuine issue of material fact as to whether the accused device performs the same or substantially the same functions as the "access limiting circuit means" and the "counter means" in Claim 5. Nonetheless, defendant's motion for summary judgment should be granted if plaintiff has not offered evidence upon which a reasonable jury could conclude that the corresponding structures of the accused

device are equivalent to those in the '900 patent.[9]

     To this end, plaintiff points to his original claim charts and to Dr. Silva's original report to show that the microprocessor used in the accused device is an equivalent structure to the integrated circuitry used in his invention. Beginning with plaintiff's claim charts, the court finds that despite being titled "[e]vidence of [i]nfringement by [the accused device]," they offer no proof of infringement. In fact, the charts do not even identify the allegedly equivalent structures of the accused device. Instead, the charts *infer* that the accused device has structures equivalent to plaintiff's invention based on the fact that the accused device allegedly performs the same *functions* as that invention. For example, with regard to the "counter means," plaintiff reasons that because the accused device performs that function, "[t]hus, the [accused] device has counter means . . . ."

     Dr. Silva's analysis in his original report is likewise deficient. According to Dr. Silva, the structure in the accused device that supposedly performs the Claim 5 functions is the "integrated circuit digital logic" used in that device's microprocessor. This level of corresponding structural identification is not sufficient in regard to plaintiff's own invention,

---

[9] Plaintiff agrees that the corresponding structures in his invention and the accused device are not identical. Thus, the court grants defendant's summary judgment motion with regard to that prong of the literal infringement test, leaving only the question of whether the structures of the two devices are substantially similar.

much less to establish infringement by the accused device.[10] Just as Dr. Silva says that integrated circuit digital logic is made up of "gates," "negation equivalents," "flip-flops," "etc.," he also says that microprocessors "contain[] functional blocks referred to as a Program Counter, ALU, ROM, RAM, Instruction Register, Instruction Decoder, Memory Address Register, Input-Output units . . . [which are implemented with arrays of logical gates (OR, AND, etc.) and flip-flops] [and] a system clock [to coordinate] these blocks." Despite this, Dr. Silva neglects to point out *what* specific components are used in the accused device and *how* they go about performing the allegedly same functions performed by plaintiff's invention. Instead, Dr. Silva offers the simple

---

[10] Indeed, prior to submitting his new claim charts, plaintiff's identification of the corresponding structures in his own invention consisted of Dr. Silva's conclusion, for every function of every claim, that, "the means for performing this function in the patent is integrated circuit digital logic." This level of structural analysis is woefully inadequate.

While "integrated circuit digital logic" may accurately describe the sum of all the parts that perform each function in the '900 patent, it does not set forth the specific contents of each corresponding structure. As Dr. Silva explained in his own report, "integrated circuits appear . . . in the form of OR gates, AND gates, Exclusive OR gates, negation equivalents, Flip-Flops (RS, JK, D, etc.), etc. [and are] . . . usually coordinated with a system clock. Using these basic building blocks, any logical system can be implemented." Thus, plaintiff's conclusion that each function of the '900 patent employs "integrated circuit digital logic" is akin to saying simply that each function is performed using *some* combination of "gates," "negation equivalents," "flip-flops," "etc." without identifying *what* specific components are used and *how* they go about performing each function.

Indeed, defendant argued this very fact nearly two years ago in its reply brief in support of its motion to compel. Defendant wrote:

> [Dr.] Silva could have done better. He demonstrated at his deposition that he was easily able to identify specific structure in the '900 patent corresponding to various means elements . . . [including] individual circuit components and signals. For example, for the "detecting means" recited in Claim 1 of [the '900 patent], [Dr.] Silva identified the decoder 20, gate 48, flip-flop 56, gate 52, flip-flop 58, gate 50, gate 60, and gate 62. He also identified specific sequence detection signals recited in the claim by naming the circuit elements where they originate and end. It is structural identification at this level of detail that the Federal Circuit test demands.

conclusion that it "makes no difference how the logical structure of [the '900 patent] is carried out (discrete components, small scale integrated circuits, medium scale integrated circuits, large scale integrated circuits, microprocessors or microcontrollers), the *result* is the same."[11]

Plaintiff's claim charts and Dr. Silva's testimony are nothing more than functional analyses followed by "reasoning by deduction," which has been found to be insufficient to establish infringement. See Alpex Computer Corp. v. Nintendo Co., 102 F.3d 1214, 1221-22 (Fed. Cir. 1996). Further, plaintiff has offered no factual foundation for his conclusions regarding the structure of the accused device. As the Federal Circuit recently explained:

> [A] party may not avoid summary judgement by simply offering an opinion of an expert that states, in effect, that the critical limitation is found in the accused device . . . . [T]he expert must set forth the factual foundation for his opinion—such as a statement regarding the structure found in the accused [device]—in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant.

Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1046 (Fed. Cir. 2000); see also Pehr v. Rubbermaid, Inc., 87 F. Supp. 2d 1222, 1236 (D. Kan. 2000) (noting that the plaintiff "offers only the arguments set forth in his papers to support his theory of equivalence," which is "insufficient to avoid summary judgment"). "Self-serving assertions without factual support in the record will not defeat a motion for summary judgment." Jones v. Merchants Nat'l Bank &

---

[11] Aside from reasons discussed below, the court notes that this particular conclusion refers to the structure of both the '900 patent and the accused device *as a whole* rather than based on the *individual functions* to which each portion of the structures correspond. See Odetics, 185 F.3d at 1268 ("The appropriate degree of specificity is provided in the statute itself; the relevant structure is that which 'corresponds' to the claimed function.") (citing Chiuminatta, 145 F.3d at 1308-09; Valmont, 983 F.2d at 1044).

Trust Co., 42 F.3d 1054, 1057 (7th Cir. 1994) (quoting McDonnell v. Cournia, 990 F.2d 963, 969 (7th Cir. 1993)). Likewise, plaintiff's counsel's arguments that the structure of the accused device's microprocessor is equivalent to plaintiff's digital logic integrated circuitry are insufficient. See Zelinski v. Brunswick Corp., 185 F.3d 1311, 1317 (Fed. Cir. 1999); Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("[T]here must be sufficient substance, other than attorney argument, to show that the issue requires trial.").

The fact of the matter is, it is plaintiff's responsibility to come forward with evidence that could lead a reasonable jury to find infringement. Anderson, 477 U.S. at 248. "Where the issue is raised, it is part of the ultimate burden of proof of the patent owner to establish, with respect to a claim limitation in means-plus-function form, that the structure in the accused device which performs that function is the same as or an equivalent of the structure disclosed in the specification." Pennwalt, 833 F.2d at 934. Defendant discharged its initial responsibility by stating the basis for its motion and by pointing out that the evidence in the record is insufficient to establish infringement. Celotex, 477 U.S. at 323, 325.

All plaintiff has shown in the instant case is that a microprocessor, *if* programmed properly, *could* perform the same or substantially the same functions as his device. But no reasonable jury could find infringement based on that mere possibility. "Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact-finder could find equivalence." Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997); see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 n. 8 (1997); Intellicall, Inc. v. Phonometrics, Inc., 952

18

F.2d 1384, 1389 (Fed. Cir. 1992).

The fatal flaw in plaintiff's analysis is that he failed to show that the accused device *is* programmed to perform the same functions as his device, and that the *way* in which the accused device performs those functions is equivalent to his device. That is, plaintiff failed to identify the *particular* components within the accused device (including any algorithm used by its microprocessor[12]) that allegedly perform the "access limiting circuit means" and the "counter means" of Claim 5, and he failed to show that those components (and/or that algorithm) perform those functions in substantially the same way as the "gates," "negation equivalents," "flip-flops," "etc." that the court has construed are the corresponding structure in plaintiff's invention. Thus, defendant's motion for summary judgment is granted with regard to Claim 5 for both literal infringement and infringement under the doctrine of equivalents.[13]

---

[12] The Federal Circuit has explained that the structure of a microprocessor is the algorithm that has been programmed to carry out its functions. See WMS Gaming Inc. v. International Game Tech., 184 F.3d 1339, 1348 (Fed. Cir. 1999); Overhead Door Corp. v. Chamberlain Group, Inc., 194 F.3d 1261, 1273 (Fed. Cir. 1999).

[13] Because the court reaches this conclusion, the court need not address defendant's argument that Claim 5 is barred from recovery under the doctrine of equivalents pursuant to Festo, 234 F.3d 558.

Defendant's motion for summary judgment under the doctrine of equivalents is granted with respect to Claim 3 and the dependent claims that also require a gating means (Claims 14, 16, 18, 20, 59, 60, 62, 63, 64, and 66), and is also granted for non-infringement literally and under the doctrine of equivalents with respect Claim 5 and the dependent claims that require a counter means (Claims 32, 33, 35, 79, 84, 85, and 87). Judgment is, therefore, entered for defendant, terminating this action.[14]

**ENTER: April 13, 2001**

Robert W. Gettleman
**Robert W. Gettleman**
**United States District Judge**

---

[14] Plaintiff's October 18, 2000, motion to strike certain exhibits to defendant's reply brief in support of the instant motion is denied as moot. This court did not rely on plaintiff's statement in a copending action that he cannot sustain his burden of proof with respect to infringement without identifying and analyzing the software that controls the operation of the accused device. Instead, this court reached that same conclusion based on its own examination of the undisputed facts and the law.