Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 98 C 6250 | Date | June 26, 2001 |
| Case Title | Philip S. Jackson v Casio Phonemate, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☐ Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
   ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)
(10) ☒ [Other docket entry]

Memorandum Opnion and order entered.
Accordingly, plaintiff's motion to alter the judgment is denied and the instant case is, positively, terminated.

(11) ☒ [For further detail see] ☐ order on the reverse of ☒ order attached to the original minute order form.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices |
| | No notices required. | | FILED FOR DOCKETING JUN 29 2001 | |
| ☒ | Notices mailed by judge's staff. | | | date docketed |
| | Notified counsel by telephone. | | 01 JUN 28 PM 4:43 | |
| | Docketing to mail notices. | | | docketing dpty. initials |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate Judge. | | 06-26-01 | date mailed notice |
| | courtroom deputy's Initials | Date/time received in central Clerk's Office | | mailing dpty. initials |

Document # 103

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP S. JACKSON, )
)
    Plaintiff, )
) No. 98 C 6250
v. )
) Judge Robert W. Gettleman
CASIO PHONEMATE, INC., ASAHI )
CORPORATION, and CASIO COMPUTER CO., )
LTD., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

On October 6, 1998, plaintiff Phillip Jackson filed suit against Casio Phonemate, Inc., Asahi Corporation, and Casio Computer Co. (collectively, defendant or "Casio") alleging that defendant infringed his patent, United States Patent No. 4,596,900 ("the '900 patent"). Nearly three years, twenty status hearings, and thirteen motions later,[1] plaintiff has filed a motion to alter the judgment entered in Jackson II pursuant to Federal Rule of Civil Procedure 59(e). For the reasons explained below, plaintiff's motion is denied.

## DISCUSSION

Rule 59(e) allows plaintiff to bring to the court's attention newly discovered evidence or a manifest error of law or fact. LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995). It "essentially enables a district court to correct its own errors, sparing the

---

[1] Most notably two voluminous, complex motions for summary judgment were filed by defendant, the most recent of which the court granted in its entirety, "terminating this action." See Jackson v. Casio Phonemate, Inc., 105 F. Supp. 2d 858 (N.D. Ill. 2000) ("Jackson I"); Jackson v. Casio Phonemate, 2001 U.S. Dist. LEXIS 4732, 2001 WL 395182 (N.D. Ill. Apr. 13, 2001) ("Jackson II"). Familiarity with both of these decisions is assumed herein.



parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). It does not, however, "provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

The subject of plaintiff's Rule 59(e) motion is neither the findings of uncontested fact in Jackson II, nor apparently its holding. Instead, plaintiff asserts that "it was manifest error for the [c]ourt to terminate the entire case, as opposed to entering judgment as to Model TC-540 only." According to plaintiff, he was "caught by surprise" by the court's termination of the instant case after granting defendant's second summary judgment motion because, as he understood it, Jackson I and Jackson II were solely aimed at resolving the question of whether the Model TC-540 infringes the '900 patent. Plaintiff contends that there are "at least 11 other Casio models that appear to infringe the '900 patent: the models 9370, TA-120, TA-116, TI-330, TC 508, TC-510, TA-160, 3870, 3700, TA-180, and 9300."[2] Thus, plaintiff urges the court to reinstate the instant case, reopen discovery, and allow the parties to continue litigating with respect to these "at least 11" remaining potentially infringing devices.

To support this argument, plaintiff makes several claims, each of which lacks merit. In

---

[2] The instant motion marks the first time that plaintiff has identified to the court any allegedly infringing Casio device other than the Model TC-540. In his response brief to defendant's second motion for summary judgment, plaintiff did state that "there are many other Casio models that infringe the '900 patent," but for the reasons set forth herein, the court did not address plaintiff's remark in deciding Jackson II.

the end, while it may be true that plaintiff intended to pursue infringement claims against the "at least 11 other Casio models" in addition to the Model TC-540,[3] as explained below plaintiff missed his chance to pursue those potential claims.

Plaintiff's first argument is that his delay in pursuing his other claims is because "Casio refused to respond to [plaintiff's] discovery requests regarding its other beeperless remote devices." Here plaintiff is referring to the interrogatories and document request that he served on defendant in April 1999. In both requests, plaintiff asked for all sorts of information about the "Accused Devices," a term he defined as including:

> (1) the . . . Model TC-540; and (2) all other devices made, used, sold or offered for sale in the United States, or imported into the United States by [defendant] from October 6, 1992 to the present that respond to Touch-Tone tones from a location remote from the device and, in response thereto, enable the remote caller to control the device . . . including, but not limited to, telephone answering machines, fax machines, computers, printers, "smart" telephones, and the like.

In June 1999, in response to plaintiff's requests, defendant objected to the term "Accused Devices" as defined by plaintiff, stating:

> [Defendant] objects to the definition of "Accused Devices," because it includes all devices having a "beeperless remote" or "tone remote" feature. This definition is vague, indefinite and overly broad. As [plaintiff] knows, [defendant] had products on sale with the "beeperless remote" feature more than a year before the filing date of the '900 patent and thus [defendant's] products cannot reasonably be accused of infringement on that basis alone. Neither this definition nor [plaintiff's] complaint, which accuses the [Model] TC-540 and devices constructed in a similar manner, namely those "having a 'beeperless remote' or 'tone remote' control feature" (see Complaint, ¶¶52, 53 and 55), provide reasonable notice as to which of [defendant's] many products [plaintiff] accuses of infringement. Furthermore, the time for [plaintiff] to investigate and form a

---

[3] Plaintiff's compliant alleged: "Upon information and belief, most, if not all, of the telephone answering machines sold and to be sold by Casio in the United States after October 6, 1992 infringe the '900 patent."

3

basis for asserting infringement against specific products was before he filed his complaint, not after. See, e.g., Judin v. United States, 110 F.3d 780, 784 (Fed. Cir. 1997). [Defendant] accordingly will construe "Accused Devices" to mean the ... Model TC-540, which is the only device that [plaintiff] has unambiguously identified as allegedly infringing the '900 patent. (Emphasis added.)

Thus, plaintiff is correct that defendant "refused to respond to [plaintiff's] discovery requests regarding its other beeperless remote devices." The problem with plaintiff's reliance on this refusal, however, is that plaintiff did not file a motion to compel the information pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

Further, the court notes that around the same time that plaintiff made the above discovery requests to defendant, defendant sent its own interrogatories to plaintiff, asking plaintiff to:

Identify all models of [defendant's] products which plaintiff contends infringe the '900 patent, and for each such product, state which claims of the '900 patent plaintiff contends are infringed, including whether such infringement is alleged to be literal or under the doctrine of equivalents, and state in the form of a claim chart a detailed explanation of how that product embodies each limitation of each such claim.

On June 6, 1999, the same day defendant tendered its objection to plaintiff's discovery requests for information about the "Accused Devices," plaintiff tendered his response to defendant's interrogatory. Plaintiff's response answered defendant's request with respect to the Model TC-540 and provided claim charts that purported to support his infringement claim. With regard to the remaining Casio devices accused of infringement, however, Jackson wrote that he "has issued discovery requests seeking identification" of those devices and that "[a]fter such identification . . . [he] will undertake the necessary study and evaluation of them and then supplement this Response." Plaintiff's failure to supplement his response (as required by Federal Rule of Civil Procedure 26(e)(1)) or to file a motion to compel defendants to provide the

4

information he requested about Casio's "at least 11" other potentially infringing devices, is inexcusable.

Indeed, plaintiff failed to file a motion to compel despite another clear indication from defendant that doing so would be necessary to obtain the requested information. In July 1999, plaintiff and defendant exchanged letters. Plaintiff's counsel first wrote: "[Defendant] has responded to the discovery requests as if . . . [the] Model TC-540 is the only device which [plaintiff] is accusing infringes his patent. Of course, this is not the case." In response, defendant's counsel explained defendant's objection to the term "Accused Devices" once more, and added: "Since you have only identified the TC-540, we must conclude that that is the only accused product." But not even this motivated plaintiff to file a motion to compel. As a result, the debate over plaintiff's definition of "Accused Devices" remained unknown to the court, and the litigation proceeded, focusing exclusively on the Model TC-540.

Plaintiff attempts to use defendant's focus on the Model TC-540 to his advantage now, arguing that defendant "limited its attacks on [plaintiff's] case to the Model TC-540." As best as the court can tell, in making this argument plaintiff is attempting to use defendant's conduct to excuse his failure to file a motion to compel with respect to the "at least 11 other Casio models." But plaintiff's argument defies logic. Of course defendant limited its attacks on plaintiff's case to the Model TC-540—defendant warned plaintiff that it would do just that and plaintiff did nothing to prevent it. Moreover, defendant's focus on the Model TC-540 is supported by plaintiff's own representations to the court indicating that his claims hinge on the Model TC-540. For example, plaintiff's complaint alleges that:

Casio has been and is still infringing the '900 patent by manufacturing and/or

5

selling telephone answering machines embodying the patented invention in the
United States and designated as, for example, [the Model] TC-540, and by
manufacturing and/or selling other Casio devices <u>constructed in a similarly
infringing fashion</u>, in the United States, and will continue to do so unless enjoined
by this Court. (Emphasis added.)

The natural conclusion from this averment is that plaintiff's allegations rely only on the infringement determination for the Model TC-540. After all, if the TC-540 does not infringe, neither do devices "constructed in a similarly infringing fashion."

Similarly, in the joint status report of the parties in April 1999, plaintiff wrote: "[Plaintiff] believes that the accused devices listed in the Complaint, together with all other Casio PhoneMate devices <u>constructed in a similarly infringing fashion</u> and sold in the United States from six years prior to the date the Complaint was filed, infringe his '900 patent." (Emphasis added.) The only "accused device" specifically listed in plaintiff's complaint is the TC-540 and, again, given the court's finding in <u>Jackson I</u> and <u>Jackson II</u> that plaintiff failed to establish infringement with regard to that device, there can be no other "devices constructed in a similarly infringing fashion."

Plaintiff's own expert couched his opinion in similar language as well. Dr. Silva analyzed the Model TC-540 only, calling it "the device at issue." He also wrote that, in his opinion, plaintiff's '900 patent is infringed "by the [Model TC-540] <u>and by all other of [d]efendant's devices that operate in a similar manner with respect to the Touch-Tone remote control feature thereof</u>, literally and/or under the Doctrine of Equivalents." (Emphasis added.) Similarly, in plaintiff's response to defendant's motion to compel plaintiff to provide adequate claim charts, plaintiff refers to Dr. Silva's report and to the claim charts it submitted to defendant—both of which address infringement with regard to the Model TC-540 only—and

6

states: "The 90 pages of claim charts that [plaintiff] has already provided [defendant] thoroughly explain how [defendant] is infringing [plaintiff's] patent."[4] Thus, plaintiff's failure to file a motion to compel with regard to the "at least 11 other Casio models," along with his representations to the court that his claims hinge on the Model TC-540 infringement finding, explain and justify defendant's focus on that device.

Despite this, plaintiff now claims that he was "caught by surprise" by the court's termination of the instant case upon granting defendant's second motion for summary judgment in Jackson II. The court is unmoved. In addition to the above, which explains why defendant and the court focused on the Model TC-540, the court notes that plaintiff was amply warned that defendant's motions for summary judgment were meant to be, and were considered by the court to be, dispositive of the instant suit. During a status hearing with the parties in April 1999, for example, the court referred to defendant's first motion for summary judgment and its motion to compel plaintiff to provide adequate claim charts as "dispositive" motions. Defendant agreed with that characterization, and plaintiff was silent in response. Then, during a status hearing in August, 1999, the court admonished the parties to avoid piecemealing the instant case, set a due date for dispositive motions, and directed that all discovery issues outstanding be brought to the court's attention during the briefing of those motions. The court explained:

> THE COURT: What I don't want to happen in this case if I can possibly help it is what happens in too many patent cases, particularly the bigger ones, where there are so many bites at the apple that there is nothing left of it, and you can't recognize it as an apple by the time you're done with it . . . . But I can tell you that

---

[4] Given this statement by plaintiff, the court finds it ironic that plaintiff argues in the instant motion that "Casio moved to compel claim charts only with respect to a single model telephone answering device, the Model TC-540."

7

[this case is] going to be piecemealed to death if we're not careful. The defendant obviously wants to file a . . . dispositive motion, correct?

DEFENDANT'S COUNSEL: Yes, Your Honor.

THE COURT: All right. Let's just do that. Do your best on that. If there are discovery issues outstanding, bring them to me as discovery issues. But you can do that in the time that you'll be preparing this brief and you'll respond. And I'd like to get this done in the fall if I can.

DEFENDANT'S COUNSEL: We presently believe that we will be able to file two motions, one with respect to discovery, the other dispositive for summary judgment, by close to the end of this month.

THE COURT: Good. Why don't we say the 31st of August. Now if you have discovery problems, come in before that. I'm just putting dispositive motions by the defendant by 8/31.

Likewise, during a status hearing in December 1999, the court again referred to defendant's motion to compel and its first motion for summary judgment as "dispositive," and again plaintiff said nothing about its supposed claims against the "at least 11 other Casio models."

A month after that, in January 2000, the parties again appeared before the court. During that hearing the court raised the possibility of the parties participating in mediation. In response, defendant's counsel noted that the two motions it filed were still pending with the court and explained:

> If the court has any sense of when those motions might be decided, certainly getting decisions on them before mediation would help. <u>If we're successful, then the case is gone and there is no need for mediation.</u> If we're not, then obviously the things we're both looking at in terms of mediation are quite different from what they are now. (Emphasis added.)

This quote requires little explanation; with this statement defendant's counsel made it plain as day to the court and to plaintiff that he and his client believed the pending motions were

8

entirely dispositive of the instant case. Despite this, plaintiff made no effort to interject otherwise.

Similarly, another month later during a status hearing in February 2000, defendant's counsel eschewed the court's suggestion that the parties enter into settlement negotiations, explaining that, "We'd like to get the motion decided . . . and if we lose on the motion, then I'd like to revisit the issue with my client." Yet again, plaintiff was silent on the issue.

In the summer of 2000, the court decided Jackson I, granting defendant's first motion for summary judgment in part and denying it in part. Following that ruling, defendant filed a second motion for summary judgment, after which plaintiff filed a motion to compel a deposition (not relating to the "at least 11 other Casio models"). In briefing the motion to compel, defendant informed plaintiff that "if this case continues," defendant would produce the desired individual for deposition. (Emphasis added.) At the hearing on the motion in October 2000, plaintiff's counsel demonstrated that he understood what defendant meant by that statement. Plaintiff's counsel explained to the court: "And what they're referring to about the 'if this case continues' is the pending second amended motion for summary judgment of non-infringement." Thereafter the court explained that it would treat the motion as withdrawn because "[t]he understanding is that [defendant] will produce [the individual for deposition] if necessary or if the case survives" defendant's second motion for summary judgment. (Emphasis added.) Given the above exchanges, the court cannot fathom how plaintiff was "caught by surprise" when he learned that

defendant's second motion for summary judgment was dispositive of the instant case.[5]

Plaintiff next argues that "Casio will no doubt disingenuously assert that [plaintiff] should have filed a motion to compel, but this [c]ourt stayed discovery in this matter." First, the

---

[5] In his reply brief to the instant motion, plaintiff attempts to combat this conclusion by arguing that Jackson I and Jackson II were "valuable" toward plaintiff pursuing his claims against the "at least 11 other Casio models" because had the court "held that . . . a microprocessor was not a Section 112, Paragraph 6 equivalent, the case of course would not have continued as to any of Casio's products." According to plaintiff, "All indications to the [c]ourt or to opposing counsel that a summary judgment could be dispositive were made with this overriding issue . . . in mind." This is an argument only a lawyer could appreciate; it is a clever sales attempt, but the court is not buying.

To begin, if plaintiff truly did believe that Jackson I and Jackson II were necessary to settle the question of structural equivalence under 35 U.S.C. §112, ¶6, the court does not understand why plaintiff relied on defendant to bring those motions. Even more telling is the fact that plaintiff failed to raise the structural equivalence argument in Jackson I at all. Also, when the issue was raised in Jackson II, plaintiff did not couch his discussion in terms of it being "valuable" for his other possible claims against Casio—if he had, the court would have made clear that Jackson II was not an advisory opinion on which plaintiff could rely in pursuing other claims against Casio.

Further, the court notes that plaintiff argued quite convincingly in Jackson II that Federal Circuit caselaw dictated the conclusion that if a microprocessor containing digital logic integrated circuitry is programmed to perform the same functions as circuit elements, the former should be held to be an "equivalent" to the latter under 35 U.S.C. §112, ¶6. So convincing was plaintiff's argument, in fact, that it was accepted by a sister court in plaintiff's co-pending litigation against Thomson Consumer Electronics. See Jackson v. Thomson Consumer Elecs., 2001 U.S. Dist. LEXIS 1807, *10-14, 2001 WL 201372, *4-5 (S.D. Ind. 2001). Indeed, that ruling was made prior to this court's ruling in Jackson II. See Jackson II at *23. Thus, the court's holding in Jackson II was not novel at all.

More importantly, plaintiff has not pointed to one instance in the record where he explained to defendant or to the court his supposed understanding of what was meant by "dispositive." Based on this, the court concludes that plaintiff's newfangled definition is just that, a last-ditch effort to keep his case against Casio alive. As clever as it may be, however, the court does not find plaintiff's argument sufficient to excuse his failure to pursue his supposed claims against the "at least 11 other Casio models" until now.

10

only party who has been disingenuous in the instant case is plaintiff.[6] Next, as explained previously, defendant is absolutely correct that plaintiff should have filed a motion to compel. Finally, this court did not stay discovery until October 2000, during the status hearing discussed above. That event took place a full two years after plaintiff filed the instant lawsuit, and one year and four months after defendant objected to plaintiff's request for information about the "Accused Devices." Plaintiff had more than enough time to time to file a motion to compel.

Thus, for all of the above reasons, the court finds Jackson I and Jackson II dispositive of the instant case. As such, the court correctly terminated the instant case when it granted summary judgment on all remaining claims in Jackson II. As many courts before this one have held, plaintiff cannot now seek refuge in his past failure to pursue his discovery requests. See Porter v. Department of Children & Family Servs., 987 F. Supp. 667, 676 (N.D. Ill. 1997) (rejecting the plaintiff's argument that his failure to establish an element of his case was attributable to defendants' failure to produce the relevant information in discovery where the plaintiff failed to file a motion to compel), aff'd, 165 F.3d 32 (7th Cir. 1998); Rizzo v. Mr. Coffee, Inc., 1995 U.S. Dist. LEXIS 13990, *22, 1995 WL 571500 (N.D. Ill. Sept. 20, 1995) (noting that "[d]iscovery abuses are properly the subject of motions pursuant to Rule 37," and denying motion in limine to exclude witnesses from testifying because the moving party failed to file a motion to compel); Spencer v. Central States, Southeast & Southwest Areas Pension Fund,

---

[6] In Jackson I, the court noted plaintiff's "frivolous argument," his "unacceptable statement of additional facts pursuant to L.R. 56.1(b)(3)(B)," and his "indolent tactics." Jackson I at 861 n. 1. Similarly, in Jackson II, the court found that plaintiff's "explanations for his conduct are disingenuous" and described one of plaintiff's arguments as "preposterous." Jackson II at *18-19.

11

778 F. Supp. 985, 996 (N.D. Ill. 1991) (rejecting the plaintiff's argument that the defendant failed to disclose relevant discovery materials because the "plaintiff's course of action should have been to file a motion to compel," and the plaintiff failed to do so); cf. Singletary v. Continental Illinois Nat'l Bank & Trust Co., 1992 U.S. Dist. LEXIS 11889, *3-5, as: 1992 WL 199827, *2 (N.D. Ill. Aug. 7, 1992) (finding that while Rule 37 has no time limit, "the orderly process of discovery requires that motions to compel be brought within a reasonable time limit").

The fact of the matter is that plaintiff had three years to pursue his claims against Casio. During that time, plaintiff appeared at twenty status hearings and argued thirteen motions. If all of this litigation were held dispositive for the Model TC-540 only, then at plaintiff's current rate this litigation would span "at least" another thirty-three years. Enough is enough—actually in this case enough has been more than enough. Plaintiff had his day in court (actually he had close to a thousand days in court), and the court will not now allow him to use Rule 59(e) to advance arguments that could and should have been presented to the court previously. See Moro, 91 F.3d at 876. Plaintiff's motion to alter the judgment entered in Jackson II is denied.

Lest plaintiff persist in his assertion that this result is "manifestly unfair," the court reminds plaintiff of another, equally viable ground for the court's finding. In deciding Jackson II, the court was called upon to settle a dispute between the parties regarding the claim charts plaintiff submitted in response to one of defendant's interrogatories. See Jackson II at *12-20. In September 1999, defendant filed a motion to compel plaintiff to provide new claim charts, arguing that plaintiff's charts did not identify the corresponding structure of the '900 patent and were therefore inadequate. Id. at *12-13. In response, plaintiff maintained to defendant and to the court that his claim charts were adequate and, in February 2000, the court denied defendant's

12

motion after plaintiff agreed to be bound by the claim charts he submitted. Id. at *13-14. Mysteriously, plaintiff filed new claim charts along with his response brief to defendant's second motion for summary judgment. Id. at *12. Understandably, defendant moved to strike plaintiff's new claim charts. Id.

After finding that plaintiff's new claim charts provided the exact information defendant sought in its motion to compel, and emphasizing that plaintiff chose to be bound by his original claim charts, the court concluded that "plaintiff was amply warned by defendant and by the court that he might suffer the consequences that defendant now suggest." Id. at *15-19. Even so, the court "spared" plaintiff's new claim charts from defendant's motion to strike. Id. at *19. The court did this for two reasons; first, because the claim charts aided the court in construing plaintiff's claims,[7] and second because doing so did not prejudice defendant. Id. As a result of that holding, the court construed the corresponding structure of the "access limiting circuit means" and the "counter means" for Claim 5 of the '900 patent and then turned to the relevant infringement analysis. Id. at *20-33.

With the instant motion, plaintiff seeks to reopen the instant case and pursue his infringement claims against "at least 11 other Casio models." If this is allowed, as plaintiff points out, the claim constructions of the '900 patent performed by the court in Jackson I and Jackson II will apply. See Pfaff v. Wells Electronics, Inc., 5 F.3d 514 (Fed. Cir. 1993). Because

---

[7] As noted in Jackson II, "Without the charts, the court would be hard-pressed to construe the corresponding structure to each of the Claim 5 functions of [the '900 patent]. This is not because of any shortcoming of the court, but rather because plaintiff's previous attempt at identifying the corresponding structure of his own invention was woefully inadequate." Jackson II at *19 n. 7.

13

of this, plaintiff will have the opportunity to benefit from the new claim charts he submitted in response to defendant's second motion for summary judgment—a result the court did not foresee when it decided not to strike those claim charts in Jackson II. Indeed, allowing plaintiff to make use of his new claim charts with respect to the "at least 11 other Casio models" would negate one of the two reasons the court "spared" the claim charts to begin with: it would prejudice defendant. See Jackson II at *19. The court simply cannot allow such a result. Indeed, the court would sooner reconsider its holding in Jackson II, grant defendant's motion to strike plaintiff's new claim charts, and grant defendant's motion for summary judgment due to the inadequacy of plaintiff's original claim charts and, alternatively, plaintiff's failure to establish infringement, than allow plaintiff to use the court's ruling in Jackson II with respect to plaintiff's new claim charts to his advantage now.

## CONCLUSION

Plaintiff's motion to alter the judgment entered in Jackson II is denied and the instant case is, positively, terminated.

**ENTER:** **June 26, 2001**

_____
**Robert W. Gettleman**
**United States District Judge**